**Tamara COOK, Appellant
(Defendant below),**

**v.**

**Kenneth WHITSELL–SHERMAN,
Appellees (Plaintiff below).**

No. 48S04–0211–CV–607.

Supreme Court of Indiana.

Sept. 24, 2003.

273

Kevin C. Tyra, Doris L. Sweetin, Indianapolis, IN, Attorneys for Appellant.

Richard Walker, Anderson, IN, Attorney for Appellee.

BOEHM, Justice.

Tamara Cook's dog bit Kenneth Whitsell–Sherman while Whitsell–Sherman was discharging his duties as a letter carrier. The liability of owners whose dogs bite mail carriers and certain other public servants is governed in Indiana by statute. We hold the effect of this statute is to render dog owners strictly liable if their dogs bite the described public servants without provocation.

We also hold Indiana Rule of Evidence 413 allows the admission into evidence of

bills for actual charges for past medical treatment but does not authorize admission of written statements purporting to estimate future medical costs.

**Factual and Procedural Background**

On the afternoon of July 31, 1998, Kenneth Whitsell–Sherman was delivering mail as a letter carrier for the United States Postal Service. When he arrived at the home of Marva and Joseph Hart, the Harts were on the sidewalk outside their fenced yard and their eight-year-old daughter was several feet away on the sidewalk, holding Maggie, a 100–pound Rottweiler, on a leash. Maggie was owned by appellant Tamara Cook, and the Harts were taking care of her while Cook was out of town. When Whitsell–Sherman finished delivering the Hart's mail and attempted to walk around Mrs. Hart, Maggie broke free and bit Whitsell–Sherman on the left hand. Before this incident, Maggie had never demonstrated any aggressive or violent tendencies.

Whitsell–Sherman sued Cook and the Harts. The Harts did not appear and a default judgment was entered against them on both the complaint and Cook's cross claim for indemnity. After a bench trial, the trial court found that Cook was the owner of the dog and the Harts had custody and control at the time of the incident. The court concluded that Cook was liable for negligence per se and violation of a statutory duty.

■ The trial court found it "highly likely" that Whitsell–Sherman will need significant future surgery[1] and ruled that

1. The trial court made these findings by accepting verbatim Whitsell–Sherman's proposed findings of fact. This practice weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court. *Prowell v. State,* 741 N.E.2d 704, 708–09 (Ind.2001). Here, the

adoption of the proposed findings was not by an entry that recited the findings. Rather, it was by a one-line order reciting in relevant part, "Findings of fact and conclusions of law approved as per order." This practice leaves us with an even lower level of confidence that

Evidence Rule 413 allowed Whitsell–Sherman to prove these future costs through four contested items of evidence: letters from a hospital, a surgeon, and an anesthesiologist estimating the cost of future treatment and a summary of future prescription costs, compiled by Whitsell–Sherman's lawyer. The trial court entered judgment for Whitsell–Sherman against Cook and the Harts in the amount of $87,000. Cook appealed and the Harts remained in default.

Indiana Code section 15–5–12–1 provides:

If a dog, without provocation, bites any person who is peaceably conducting himself in any place where he may be required to go for the purpose of discharging any duty imposed upon him by the laws of this state or by the laws or postal regulations of the United States of America, the owner of such dog may be held liable for any damages suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

On appeal, the Court of Appeals agreed that Cook was the "owner" of the dog for purposes of this statute, but reversed the trial court's determination that the statute rendered the owner liable under the doctrine of negligence per se. The Court of Appeals reasoned that the statute imposed no duty upon Cook and did not alter the common law standard of reasonable care required of dog owners except to eliminate the common law presumption that a dog is harmless. The court concluded that under general rules of negligence a public servant who has been bitten by a dog must still show that the dog's owner failed to act reasonably to prevent the dog from causing harm. Because the admissibility of evidence of future medical expenses was likely to arise again upon retrial the Court

of Appeals also addressed the trial court's ruling on Evidence Rule 413, and held that estimates of future medical charges were admissible under Rule 413. This Court granted transfer.

## I. Liability of "Owners" and Keepers to Public Servants Bitten by Dogs

At the time Maggie bit Whitsell–Sherman, Cook was Maggie's owner but not her custodian. Whether Indiana Code chapter 15–5–12 renders Cook liable under these facts is a question of law and we review it de novo.

■ Cook argues initially that the statute does not apply to her in this situation because at the time of the incident she was not in possession of the dog. Section 15–5–12–2 provides that "owner" as the term is used in 15–5–12–1 "includes a possessor, keeper, or harborer of a dog." Cook reasons that under this definitional section, an "owner" of a dog is the person who has control of the dog at the time of the bite. As in this case, the "keeper" may not be the person to whom the dog belongs. The Court of Appeals held that the statute applies to Cook by its terms. The statute explicitly provides that " 'owner' means the owner of a dog." Ind.Code § 15–5–12–2 (1998). The court reasoned that the fact that the statute goes on to say that "owner" also "includes" the "possessor, keeper, or harborer of a dog" does not restrict the term "owner" to those in immediate custody. Rather, it expands the definition of "owner" to include others in addition to the dog's owner. We agree that Cook's liability is governed by this statute. By providing that owner "includes" custodians, it does not substitute them for the owner if, like Cook, the owner is absent from the scene of the bite. This also

all findings reflect the independent evaluation by the trial court.

seems fair because the owner is usually better able to know the dog's temperament than one to whom temporary custody is extended. The owner is ordinarily best positioned to give whatever special instructions are necessary to control the dog.

 Cook argues that even if she is an owner, the trial court misapplied Section 15–5–12–1 when it held her negligent per se by reason of the statute. The common law presumes that all dogs, regardless of breed or size, are harmless. *Poznanski v. Horvath*, 788 N.E.2d 1255, 1257 (Ind.2003); *Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind.1993). This presumption can be overcome by evidence of a known vicious or dangerous propensity of the particular dog. *Ross*, 619 N.E.2d at 914. The owner or keeper of a dog who knows of any vicious propensity is required to use reasonable care in those circumstances to prevent the animal from causing injury. *Id.* Furthermore, the owner of a dog is expected to use reasonable care to prevent injury that might result from the natural propensities of dogs. *Id.* "Thus, whether the owner or keeper of the animal is aware of any vicious propensity, the legal description of the duty owed is the same: that of reasonable care under the circumstances." *Id.* Cook argues that Indiana Code section 15–5–12–1 does nothing to alter this traditional framework other than to remove the common law presumption of harmlessness if a dog injures a public servant. Accordingly, she argues, the public servant injured by a dog still bears the burden of showing that the owner of the dog failed to exercise reasonable care to prevent the dog from causing injury.

 We agree with Cook's view of the common law of dog bites, but we think it clear that Section 15–5–12–1 was intended to alter that common law framework if the victim is a letter carrier. A statute in derogation of the common law is presumed to be enacted with awareness of the common law. *Bartrom v. Adjustment Bureau, Inc.*, 618 N.E.2d 1, 10 (Ind.1993). Here, the legislature clearly intended to change the common law and did so by explicitly removing the common law presumption that a dog is harmless unless it acts otherwise. Some states have chosen to impose strict liability for all dog bites. As the Restatement notes, "[s]tatutes frequently abolish the necessity of scienter and impose strict liability for all harm caused to human beings and livestock by dogs." *Restatement (Second) of Torts* § 509 cmt. f (1977). *See, e.g., Nicholes v. Lorenz*, 49 Mich.App. 86, 211 N.W.2d 550, 551 (1973) (a statute that provides "the owner of any dogs which shall ... bite any person ... shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness" places absolute liability on the owner of the dog).

 The Indiana statute imposes a less sweeping revision of common law. It protects only public servants, and does not expressly set a standard of conduct or impose liability for a bite. The trial court concluded that the effect of the statute was to render the owner negligent per se. Negligence per se is ordinarily found where the actor has violated a duty imposed by law. *Elder v. Fisher*, 247 Ind. 598, 602, 217 N.E.2d 847, 850 (1966). For example, violation of a statute making it a misdemeanor to permit cattle to wander onto a highway is negligence per se. *Corey v. Smith*, 233 Ind. 452, 455, 120 N.E.2d 410, 412 (1954). Just as the Indiana statute does not explicitly create liability, it also does not expressly establish a standard of conduct. It thus does not suggest negligence per se under standard doctrine.

We nevertheless conclude the statute has the effect of rendering the owner liable

for bites of public servants. Persons engaged in dangerous activities may be strictly liable to others who are injured. Specifically, owners of wild animals have been viewed as negligent per se for failure to control the animal. *See Bostock–Ferari Amusement Co. v. Brocksmith,* 34 Ind. App. 566, 568, 73 N.E. 281, 282 (1905). More recently, liability for injuries inflicted by wild animals has been viewed as strict liability doctrine. *Irvine v. Rare Feline Breeding Ctr.,* 685 N.E.2d 120, 123 (Ind.Ct.App.1997) (injuries by a tiger). Thus, possession of a wild animal is, like blasting, an unreasonably dangerous activity subjecting the actor to strict liability. The common law treated dogs, unlike tigers, as presumptively not dangerous and not subject to that liability. Otherwise stated, although a dog with a previously spotless record may present some risk of a bite, canine ownership was not an abnormally dangerous activity at common law. However, the Indiana statute puts dog owners on the same legal footing as owners of less domestic animals as far as public servants are concerned. The result is strict liability for failure to prevent injuries that are the result of the perceived dangerous propensity. In this case, the dangerous propensity is a dog bite. Keeping a tiger in the backyard is a classic example of an "abnormally dangerous" activity subjecting the keeper to strict liability. *See* Dan B. Dobbs, *The Law of Torts* § 345, at 947–48 (2001). The Indiana statute gives the postal delivery worker the same protection from dog bites that the common law gives all citizens from tiger maulings. In this case, the statute reflects a policy choice that the dog's owner and keeper should bear the loss rather than the injured public employee. Accordingly, Cook is subject to strict liability for Maggie's biting Whitsell–Sherman.

■ Reading the statute to impose strict liability is similar but not identical to the negligence per se theory followed by the trial court. Under negligence per se, the law accepts the legislative judgment that acts in violation of the statute constitute unreasonable conduct. A person whose acts are negligent per se can still invoke the excuses available to any negligent actor such as emergency response or lack of capacity. *See generally Restatement (Second) of Torts* § 288A; *Gore v. People's Sav. Bank,* 235 Conn. 360, 665 A.2d 1341, 1345 n. 10 (1995). Strict liability, on the other hand, assumes no negligence of the actor, but chooses to impose liability anyway. David C. Sobelsohn, *Comparing Fault,* 60 Ind. L.J. 413, 427–28 (1985).

By stating that an owner "may be held liable ... regardless of the former viciousness of such dog or the owner's knowledge of such viciousness," the statute directs that a court may hold a person liable whether or not the dog had a history of violence. Cook points to the statute's use of the word "may," and argues that the statute permits but does not require liability for the dog's first bite. She reasons that a successful plaintiff must still establish lack of reasonable care. We think "may" simply emphasizes the change in the liability scheme from the common law rule that every dog gets one free bite. Because every canine is a dangerous instrumentality as far as postal employees are concerned, the rules applicable to wild animals apply to impose strict liability. The net result of eliminating the presumption of canine harmlessness is that the statute imposes strict liability on dog owners for bites of letter carriers and other public servants in the course of their duties. The result is that the statute's removal of the presumption in most cases leaves the bitten public servant with nothing more to prove to establish liability than

who the owner is and that the dog sunk his teeth into the public servant without provocation. Failure to control the dog who bites under these circumstances renders the owner liable without more.

## II. Indiana Rule of Evidence 413

 Cook argues that the trial court erred in admitting evidence of the cost of future medical treatment that Whitsell–Sherman could face as a result of his injury. This issue turns on the construction of a rule of evidence, not its application to any particular set of facts. As such, it is reviewed de novo. *Stahl v. State*, 686 N.E.2d 89, 91 (Ind.1997).

At trial, Whitsell–Sherman introduced letters from health care providers estimating future medical expenses. These assumed he would likely need to undergo one of two types of hand surgery. Specifically, these estimates were contained in a letter from Community Hospital of Anderson estimating future surgical costs for two types of hand surgery at $4,500 for left-hand fusion and $8,000 for joint replacement, a letter from his surgeon estimating $2,307 in surgical fees, a letter from Anesthesia Services, Ltd. estimating costs for anesthetic services for the different surgeries at between $350 and $550, and a summary, compiled by his attorney, estimating future prescription drug costs over Whitsell–Sherman's life expectancy. Cook objected to this evidence as inadmissible hearsay. The trial court ruled that the evidence was admissible pursuant to Indiana Rule of Evidence 413. That Rule provides:

> Statements of charges for medical, hospital, or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable.

We conclude that Rule 413 allows the admission of bills for actual past medical charges, but does not permit future estimates of costs.

First, the text of Rule 413 does not support the result reached by the trial court and the Court of Appeals. The rule does not use the terms "past" or "future" to qualify the types of "statements" to which it applies. But it is limited to "statements." We think the rule uses "statements" not to mean "assertions of fact," but rather as equivalent to "bills" or "charges." One definition of "statement" is "a summary of a financial account showing the balance due." Merriam–Webster's Collegiate Dictionary 1148 (10th ed.1993). The rule's reference to "statements of charges" is in this sense. Moreover, the rule uses the past tense ("occasioned") in describing the "charges" for which a "statement" may be admitted under Rule 413. This by its terms allows only statements of charges for medical treatment that have already been incurred.

 The purpose of the Rule also limits its application to statements of past medical charges. In order to recover an award of damages for medical expenses, the party seeking to recover these damages must prove that the expenses were both reasonable and necessary. *Smith v. Syd's Inc.*, 598 N.E.2d 1065, 1066 (Ind. 1992). This was traditionally proven by expert testimony. The purpose of Rule 413 is to provide a simpler method of proving amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort. If there is a dispute, of course the party opposing them may offer evidence to the contrary, including expert opinion. By permitting medical bills to serve as prima facie proof that the expenses are reasonable, the rule eliminates the need for testimony on that often uncontested issue. Finally, the fact that a statement was submitted is at least some evidence that the

charge is normal for the treatment involved, and it was necessary to be performed. In short, none of the reasons for Rule 413 apply to estimates of future expenses.

Rule 413 establishes the relevance of statements of medical charges. It provides that these statements can be introduced and constitute prima facie evidence that the charges are reasonable. Relevance is one issue. Hearsay and opinion issues remain. The hearsay rules generally prohibit the introduction of evidence of out-of-court statements to prove the truth of the matters asserted in those statements. These rules are meant to prevent the introduction of unreliable evidence that cannot be tested through cross-examination. Medical bills already charged can usually be admitted over any hearsay objection either through testimony of the supplier as business records under Indiana Rule of Evidence 803(6) or through testimony of the patient to refresh memory under Rule 803(5). *See Montgomery Ward & Co. v. Gregg*, 554 N.E.2d 1145, 1161 (Ind.Ct.App.1990) ("Gregg demonstrated knowledge of particular charges.... Consequently, we find no reversible error in permitting Gregg to refer to the compilation of expenses to obtain the total cost of his medical care"). Estimates of future medical expenses are not records of an event that has occurred, as required by Rule 803(6) of a business record. Nor do they help a refresh a person's recollection. Indeed they relate to an event that has not yet occurred and may never occur.

Even if hearsay objections are surmountable, estimates of future medical charges are not as reliable as medical bills already incurred because the amount of future medical charges is usually debatable as to both the probability of the need for the treatment and the method of estimating its future cost. The letters at issue here state explicitly that they are meant only as estimates. As such, they constitute opinion evidence. This is precisely the sort of evidence that would benefit from cross-examination. Hearsay rules prevent admission of the opinion in documentary form not subject to cross-examination, and the rules governing opinion testimony require that the proponent establish the competency of the source to express the opinion. Rule 413 was not intended to, and does not do away with these requirements under the rules found in Articles VII and VIII of the Rules of Evidence. Accordingly, Rule 413 does not allow admissibility of estimates of future charges as prima facie evidence without supporting testimony admissible under the doctrines governing hearsay and opinion testimony.

For these reasons, we hold that Indiana Rule of Evidence 413 does not permit the introduction into evidence of written estimates of future medical costs. Rather, these costs must be established by admissible testimony from competent witnesses.

### Conclusion

We hold that Indiana Code section 15–5–12–1 imposes strict liability on dog owners whose dogs bite public servants without provocation. We hold also that Rule 413 of the Indiana Rules of Evidence does not support the introduction into evidence of written estimates of future medical costs. Cook argues that the amount of damages assessed against her was excessive. Because there must be a new trial of damages, we need not address this issue. This case is remanded for retrial on the issue of damages.

SHEPARD, C.J., and DICKSON, and SULLIVAN, JJ. concur.

RUCKER, J., concurs in part and dissents in part with separate opinion.

RUCKER, Justice, concurring in part and dissenting in part.

I disagree with the majority's conclusion that Indiana Code section 15–5–12–1 imposes strict liability on the owners of dogs that bite letter carriers and other public servants. Although the General Assembly abrogated the common law in this area, there is nothing in the statute to suggest that it did so by making dog owners strictly liable. Professor Prosser discussed the rationale for the imposition of strict liability against owners for injuries caused by dangerous animals. He explained that strict liability is appropriately placed:

> [U]pon those who, even with proper care, expose the community to the risk of a very dangerous thing.... The kind of "dangerous animal" that will subject the keeper to strict liability ... must pose some kind of an abnormal risk to the particular community where the animal is kept; hence, the keeper is engaged in an activity that subjects those in the vicinity, including those who come onto his property, to an abnormal risk. It is the exposing of others to an abnormal risk that is regarded as justifying strict liability.... Thus, strict liability has been imposed on keepers of lions and tigers, bears, elephants, wolves, monkeys, and other animals. No member of such a species, however domesticated, can ever be regarded as safe, and liability does not rest upon any experience with the particular animal.

Prosser and Keeton on the Law of Torts § 76, at 541–42 (5th ed.1984) (footnotes omitted). The underlying premise is that the animal itself is inherently dangerous and thus safety lies only in keeping the animal secure. *See, e.g., Irvine v. Rare Feline Breeding Ctr., Inc.,* 685 N.E.2d 120, 125 (Ind.Ct.App.1997) (discussing the imposition of strict liability on owners of wild animals), *trans. denied.*

There is nothing inherently dangerous about a dog. Indeed, as the majority correctly points out, under our common law, all dogs regardless of breed or size, are presumed to be harmless domestic animals. *Poznanski v. Horvath,* 788 N.E.2d 1255, 1258 (Ind.2003); *Ross v. Lowe,* 619 N.E.2d 911, 914 (Ind.1993). Ordinarily this presumption is overcome by evidence of a known or dangerous propensity as shown by the specific acts of the particular animal. *Poznanski,* 788 N.E.2d at 1258. However, even where the owner of a dog knows of the animal's dangerous propensity "[the] rules of liability are based upon negligence and not strict liability." *Id.* at 1259 (quoting *Alfano v. Stutsman,* 471 N.E.2d 1143, 1144 (Ind.Ct.App.1984)).

In this case the majority reasons the statute's language that an owner *"may be held liable* ... regardless of the former viciousness of such dog or the owner's knowledge of such viciousness," has the "net result" of imposing strict liability on dog owners when their dogs bite letter carriers and other public servants in the course of their duties. Slip op. at 8–9 (emphasis added). In my view this is an overly expansive reading of the statute. Had the Legislature intended to impose strict liability, it would have done so by dictating that an owner *"shall be held liable* ... etc." Absent such language, I agree with my colleagues on the Court of Appeals that the statute removes the common law presumption that a dog is harmless in situations where an unprovoked dog bites a letter carrier or other public servant. In essence, the statute simply relieves the plaintiff of the burden of establishing a dog owner's knowledge of the dog's dangerous propensities. The plaintiff still has the burden of establishing that the dog owner failed to exercise reasonable care to prevent the dog from causing injury. On this point I therefore dissent. I

concur in the remainder of the majority opinion.