
FILED
Mar 02 2015, 9:48 am
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Jim Brugh
Logansport, Indiana

ATTORNEY FOR THE COMMON
COUNCIL OF LOGANSPORT

John R. Molitor
Indianapolis, Indiana

ATTORNEY FOR TED FRANKLIN,
MAYOR OF THE CITY OF
LOGANSPORT

Mark J. Crandley
Barnes & Thornburg, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Julie Kitchell,

*Appellant-Plaintiff,*

v.

Ted Franklin, as the Mayor of the
City of Logansport, and The
Common Council of the City of
Logansport,

*Appellees-Defendants*

March 2, 2015

Court of Appeals Case No.
09A02-1405-PL-369

Appeal from the Cass Superior Court

The Honorable Rick A. Maughmer, Judge

Case No. 09D02-1303-PL-11

**Vaidik, Chief Judge.**

# Case Summary

[1] Julie Kitchell appeals the trial court's award of attorneys' fees to Logansport Mayor Ted Franklin and the Common Council of the City of Logansport, challenging a number of the trial court's findings of fact and conclusions of law. We conclude first that the findings and conclusions are not inherently suspect even though they were adopted verbatim from the City's proposed findings and conclusions; moreover, we find that even if we were to eliminate entirely the findings of fact challenged by Kitchell, the remaining findings would amply support the conclusion that her claim was unreasonable and groundless. We also conclude that Kitchell's characterization of this case as a matter of "first impression" does not shield her from attorney-fee liability. Therefore, finding that the trial court did not abuse its discretion in awarding attorneys' fees, we affirm.

## Facts and Procedural History

[2] The City of Logansport wished to replace its coal-powered electric facility with one that used recycled solid waste to produce energy. To that end, the City began to explore the possibility of entering into a public-private partnership under Indiana's Public-Private Agreements Act (the PPA Act), Indiana Code sections 5-23-1-1 through 5-23-7-2, with a provider that could "construct, operate, and maintain a public facility and transfer it back to City at a future date." *Kitchell v. Franklin*, 997 N.E.2d 1020 (Ind. 2013).[1] Indiana Code section 5-23-1-1 applies to, among other entities, "[a] political subdivision

---

[1] For our facts and procedural history, we rely heavily on our Supreme Court's decision on the merits of this case. The Supreme Court heard oral argument in this case on September 5, 2013.

in a county where . . . the legislative body of the political subdivision . . . adopts the provisions of this article by resolution or ordinance." *See* Ind. Code § 5-23-1-1(3)(a).

[3] In November 2012 the City issued a request for proposals (RFP) seeking providers to enter into such a partnership. After considering proposals submitted by six vendors, the Utility Service Board recommended at a public hearing that the City execute a memorandum of understanding with Pyrolyzer, LLC. The Logansport Common Council accepted the Board's recommendation and passed Ordinance No. 2013-07 authorizing the mayor to enter into a memorandum of understanding and negotiate an agreement with Pyrolyzer. At the same time, the Council passed Resolution No. 2013-08, formally adopting the PPA Act under Indiana Code section 5-23-1-1 and ratifying the issuance of the RFP and all other acts performed in accordance with the PPA Act.

[4] In March 2013 Logansport resident Julie Kitchell filed a petition against Mayor Franklin and the Logansport Common Council, seeking a declaration that Ordinance No. 2013-07 was invalid. Specifically, Kitchell argued that the City did not have the authority to pass the Ordinance because under Indiana Code section 5-23-1-1 the City was required first to adopt the provisions of the PPA Act by resolution or ordinance and only after doing that would the City be authorized to publish an RFP. Appellant's App. p. 23-24.

[5] Mayor Franklin filed a motion to dismiss, motion to expedite, and motion for award of attorneys' fees and costs; shortly thereafter, the City joined in Mayor Franklin's motion to dismiss. The trial court granted the motion to dismiss, finding that Kitchell had failed to state a claim upon which relief could be granted, but the trial court did not address

the motion for award of attorneys' fees. Mayor Ted Franklin and the City (now collectively, the City) filed a renewed motion for an award of attorneys' fees and costs and a motion for hearing. Attached to this motion were the following: a March 2013 letter from the Mayor to Kitchell, offering to waive the demand for attorneys' fees if Kitchell would dismiss her complaint, asserting that there was "no basis in law or fact for the allegations made in the complaint[,]" Appellant's App. p. 82, and an April 2013 newspaper article entitled "Judge dismisses suit against mayor, council," in which Kitchell is quoted as follows:

> "The mayor's comment at a recent city council meeting that he doesn't expect Duke [Energy] to approach the city to renegotiate demonstrates that he neither cares about utility rates that will be escalating the next four years or that he understands the issue that has been raised," Kitchell stated. "It may only signal that he is more concerned with working on a public/private partnership once he leaves office, which would explain his motivations."

*Id*. at 84.

Kitchell filed a notice of appeal, followed by a statement in opposition to the City regarding costs. The City filed a response to Kitchell's statement, writing in relevant part as follows:

> The City respectfully wishes to renew its earlier requests that the Court grant the City a hearing on the matter of its entitlement to attorneys' fees and costs. However, in recognition that the Court had previously scheduled a hearing in response to the City's April 16 Motion (for June 11, 2013) and then cancelled that hearing after learning that [Kitchell] had filed her notice of appeal (on May 7, 2013), the City hereby defers, for the time being, making a request that the Court reschedule that hearing. Instead, the City would ask that the Court wait for the time being and then promptly reschedule that hearing after the appeal filed by [Kitchell] is duly resolved by the appellate courts.

Appellant's App. p. 107.

[7] The City filed a verified motion to transfer jurisdiction to the Supreme Court under Appellate Rule 56(A), which that Court granted. In Kitchell's appellate brief to the Supreme Court, she again argued that "[l]egislation enabling a city to use the statutory Public-Private Agreement Law must come first; any RFPs, negotiations, or legislation must follow[]" and "the Ordinance is invalid because the City failed to take the mandatory first step in the multi-step procedure." *Kitchell*, 997 N.E.2d at 1025 (citing Appellant's Br. to Supreme Court p. 18, 13-14). Kitchell further argued as follows:

> It is not unusual for state legislatures, especially in the *non*[-]*home*[-] rule states, to provide that a statute expressed in terms of general application shall take effect in each local government only upon its acceptance by such entity, or by the governing body thereof. A vote of the designated body accepting the legislation for any particular local government is thus made a condition precedent to any effectiveness of the statute in that locality.

*Id*. at 1026 (quoting Appellant's Br. p. 14, which cites *Antieau On Local Government Law* § 25.21[1] (2d ed. 2012)).

[8] The Supreme Court found no merit in Kitchell's argument, noting that Indiana *is* a home-rule state, and as such must comply with the home-rule statute that provides in relevant part "[i]f there is a constitutional or statutory provision requiring a specific manner for exercising a power, a unit wanting to exercise that power must do so in that manner." *Id*. (quoting Ind. Code § 36-1-3-6). Thus, the Court continued, "[t]he question in this case is whether 'the specific manner' required before a City may exercise the power to enter into a public-private agreement includes a sequencing requirement. We think not." *Id*. The Court continued:

> It is certainly the case [that] the legislature has set forth particular procedures that must be followed in order that a political subdivision may enter into a

contract under the [PPA] Act. For example, the RFP must contain certain language, offerors must be treated fairly and equally, and a public hearing must be held and notice of such hearing must be published in a particular way and contain particular language. I.C. §§ 5-23-5-2, -5, -9. But nowhere does the [PPA] Act require a political subdivision to "adopt" the [PPA] Act before taking any further action consistent with the [PPA] Act. A reading of the [PPA] Act as a whole indicates that it is designed to promote economic development which is executed in way that is transparent and open to public input and scrutiny. The record before us reflects that the City complied with the [PPA] Act in every particular. Viewing the pleadings in the light most favorable to Kitchell, and with every inference construed in her favor, we conclude that as a matter of law Kitchell is not entitled to relief. Thus the trial court properly granted the City's motion to dismiss for failure to state a claim upon which relief can be granted.

*Id*. at 1026-27.

[9] The Supreme Court affirmed the trial court's judgment, but declined to award appellate attorneys' fees because the City "[made] no argument and cite[d] no authority that would support such an award in these circumstances." *Id*. at 1027.

[10] After the Supreme Court issued its opinion, the City filed its request for rescheduling the cost hearing before the trial court. Kitchell filed her request for findings of fact and conclusions of law together with her supplemental statement in opposition to the City regarding costs. In May 2014 the trial court held a hearing on the City's motion for award of attorneys' fees. At the hearing, the trial court admitted, over Kitchell's hearsay objection, the March 2013 letter from the Mayor to Kitchell and the April 2013 newspaper article.

[11] Following the hearing, both parties filed proposed findings of fact and conclusions of law. The trial court entered judgment against Kitchell, adopting "verbatim" the City's extremely comprehensive, sixteen-page-long proposed findings, Appellant's Br. p. 11,

and awarding attorneys' fees to the City in the amount of $24,235. The trial court's findings of fact and conclusions of law read in relevant part as follows:

**FINDINGS OF FACT**

* * * * *

7. The Plaintiff's challenge to the City's multi-million dollar project rested on the *sequence* in which the City enacted Ordinance and Resolution.

8. The Plaintiff made no substantive challenge to the City's actions, cited no personal injury to her, and alleged no wrongful misconduct on the part of the government officials she sued.

9. Instead, she claimed the City passed the Ordinance and Resolution in the wrong order.

10. The lawsuit was filed not for its stated purpose regarding the sequence of legislative enactments. The motive for the lawsuit was the Plaintiff's disagreement with the legislative decision to proceed with the Project, a policymaking choice made by the City's officials who are elected to make such decisions.

11. Essentially, the Plaintiff sought to veto the Project through the judicial branch after she disagreed with the decision of the other, coordinate branches of government, a point the Plaintiff did not dispute either in her filings with this Court or during the May 2, 2014 hearing on the petition for attorney's fees.

* * * * *

**CONCLUSIONS OF LAW**

* * * * *

6. The Plaintiff's complaint was unreasonable, frivolous, and groundless because it is based on two fallacies that any lawyer could and should have recognized prior to filing this lawsuit.

**I. The "Condition Precedent" Fallacy**

7. The Plaintiff's primary argument in her case was that the statutes governing public-private agreements (the "PPA Statutes") required the City to adopt the PPA Statutes into the City's local law *before* it took any other action to create a public-private agreement.

8. Boiled to its essence, the lawsuit sought to strip the City of its prerogative to pursue a multi-million dollar public-private agreement simply because, in the

Plaintiff's opinion, the Resolution should have been enacted before the Ordinance.

9. The PPA Statutes say absolutely nothing about the timing of when a municipality may incorporate the PPA Statutes into local law. [citation omitted] . . .

\* \* \* \* \*

11. Simply reading the statute should have demonstrated to the Plaintiff that she had no claim based on the sequence on which the Ordinance and the Resolution were passed.

\* \* \* \* \*

21. Because nothing in the PPA Statutes could possibly be construed as controlling the sequence of when the Ordinance and Resolution were passed, the Plaintiff's claim seeking to impose such a requirement was groundless, frivolous, unreasonable and in bad faith.

\* \* \* \* \*

**II. The Ratification Fallacy**

\* \* \* \* \*

28. Indiana cities have the power to "ratify any action of the unit or its officers or employees if that action could have been approved in advance." Ind. Code § 36-1-4-16.

\* \* \* \* \*

35. Simply reading the ratification statute should have prevented the Plaintiff from filing her lawsuit but she proceeded anyway. Her decision to do so was frivolous, unreasonable, groundless and in bad faith.

Appellant's App. p. 7-19 (formatting altered).

[12] The findings and conclusions also listed "five other indicia demonstrating that [Kitchell] proceeded in bad faith in this matter," including citing a vacated Court of Appeals opinion as a Supreme Court opinion; "continually fail[ing] to meaningfully distinguish recent Indiana authority under the Home Rule Act," "publicly declar[ing] an animus toward the City and its officials," and relying on irrelevant, repealed zoning statutes. *Id.*

at 19-19(a). The findings regarding bad faith relied in part on the April 2013 newspaper article quoting Kitchell.

[13] Kitchell now appeals.

# Discussion and Decision

[14] Kitchell presents one issue for our consideration: whether the trial court abused its discretion in awarding trial-level attorneys' fees. On appeal, the trial court's decision to award attorneys' fees under this section is subject to a multi-level review: the findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 843 (Ind. 2012). Finally, the trial court's decision to award attorneys' fees and any amount thereof is reviewed for an abuse of discretion. *Id*. A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law. *Id*.

[15] The trial court awarded attorneys' fees to the City after finding that Kitchell's claim was unreasonable, frivolous, groundless, and in bad faith. *See* Appellant's App. p. 21. Indiana Code section 34-52-1-1(b)(1), (3) provides: "In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party: [] brought the action . . . on a claim . . . that is frivolous, unreasonable, or groundless; . . . [or] litigated . . . in bad faith." Broadly stated, the attorney-fee statute strikes a balance between respect for an attorney's duty of zealous advocacy and "the important policy of discouraging unnecessary and unwarranted litigation." *Mitchell v.*

*Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998) (quoting *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989), *aff'd and adopted by* 543 N.E.2d 627 (Ind. 1989)). Subsection (b)(1) of the statute focuses on the legal and factual basis of the claim and the arguments supporting the claim. *Id*.

[16] A claim is "frivolous" if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *reh'g denied, trans. denied*. A claim is "unreasonable" if, based on the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation. *Id*. A claim or defense is "groundless" if no facts exist that support the legal claim relied on and presented by the losing party. *Id*. However, the law is settled that a claim is neither groundless nor frivolous merely because a party loses on the merits. *N. Elec. Co., Inc. v. Torma*, 819 N.E.2d 417, 431 (Ind. Ct. App. 2004), *reh'g denied, trans. denied*. Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will. *Wagler*, 980 N.E.2d at 383.

[17] As a general matter, Kitchell contends first that the trial court's findings of fact and conclusions of law as a whole are "suspect" because they are a verbatim adoption of the City's proposed findings. As support, Kitchell cites *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003), in which the Supreme Court wrote as follows:

> The trial court made these findings by accepting verbatim Whitsell-Sherman's
> proposed findings of fact. This practice weakens our confidence as an appellate

court that the findings are the result of considered judgment by the trial court. *Prowell v. State*, 741 N.E.2d 704, 708-09 (Ind. 2001). *Here, the adoption of the proposed findings was not by an entry that recited the findings. Rather, it was by a one-line order reciting in relevant part, "Findings of fact and conclusions of law approved as per order."* This practice leaves us with an even lower level of confidence that all findings reflect the independent evaluation by the trial court.

*Id*. (emphasis added). As seen from the above-quoted text, *Cook* does not stand for the proposition that findings of fact and conclusions of law adopted verbatim are inherently suspect; instead, the case calls attention to the fact that the trial court in that case merely "approved as per order" the party's submitted findings and conclusions. *See id*.

[18]   Indeed, in the case cited in the *Cook* opinion, *Prowell v. State*, the Court expanded on the practice of adopting a party's findings:

> It is not uncommon for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. The trial courts of this state are faced with an enormous volume of cases and few have the law clerks and other resources that would be available in a more perfect world to help craft more elegant trial court findings and legal reasoning. We recognize that the need to keep the docket moving is properly a high priority of our trial bench. For this reason, we do not prohibit the practice of adopting a party's proposed findings. But when this occurs, there is an inevitable erosion of the confidence of an appellate court that the findings reflect the considered judgment of the trial court.

*Prowell*, 741 N.E.2d at 708-09. In *In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005), this Court wrote: "[A]lthough we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous." We agree. While we acknowledge that the verbatim adoption of a party's findings and conclusions leaves us with a lower level of confidence that the findings reflect the independent judgment of the trial court, we nonetheless decline to find that the trial court's findings of fact and

conclusions of law in this case are inherently suspect because they are verbatim reproductions of the City's submission. *See Cook*, 796 N.E.2d at 273 n.1; *see also Prowell*, 741 N.E.2d at 708.

[19] Kitchell also challenges numerous specific findings of fact and conclusions of law. As to the findings of fact, Kitchell objects first to the trial court's admission of the April 2013 newspaper article. Second, Kitchell disputes the findings regarding her alleged true motive in bringing this lawsuit; in particular, that Kitchell sought to "stop the City in its efforts to modernize its power plant" (Paragraph 1), "sought to veto the Project" (Paragraph 11), and that "[t]he lawsuit was filed not for its stated purpose regarding the sequence of legislative enactments" (Paragraph 10). Appellant's Br. p. 13-14. Third, Kitchell disputes that she was making a "challenge to the City's multi-million dollar project" (Paragraph 7) because there is "no evidence in the record that the City had a project worth one dollar, let alone a multi-million dollar project." *Id*. at 14. Fourth, Kitchell challenges the trial court's finding that she "made no substantive challenge to the City's actions, cited no personal injury to her, and alleged no wrongful conduct on the part of the government officials she sued" (Paragraph 8). *Id*. Fifth, Kitchell disputes two findings regarding her presence at the hearing and decision not to testify or call witnesses (Paragraphs 12 and 22). Finally, Kitchell asserts that Paragraphs 26-41[2] "are not findings of fact. The findings extol the professional practices of the City's counsel

---

[2] Paragraphs 26-41 of the findings of fact outline in detail the legal education, areas of practice, and qualifications of the City's attorneys, presumably to support the amount of attorneys' fees requested.

[Mark J.] Crandley and [John R.] Molitor, while depicting (without naming) counsel [Jim] Brugh as the 'unreasonable man.'" *Id*. at 16-17.

[20] Kitchell also challenges three of the conclusions of law, arguing that they are unsupported by the evidence. *See id*. at 17. Essentially, Kitchell takes umbrage at the trial court's use of the term "fallacies" in Paragraph 6, and at being characterized as "unreasonable" in Paragraphs 19 and 32. *See id*. at 18 ("There is no legal definition of 'fallacy.' . . . That term is demeaning and argumentative."), 17 ("[T]he trial court should not clothe findings with the imprimatur of judicial approval when they are used to exaggerate the City's attorneys' expertise and denigrate Kitchell's attorney; that is, that he is not a reasonable man. That is, he pursued two 'fallacies.'").

[21] Both the first and second of Kitchell's challenges to the findings of fact—that the newspaper article was improperly admitted hearsay, and that the findings regarding Kitchell's alleged true motive in bringing the lawsuit were unsupported by evidence—go to the issue of "bad faith." Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will. *Wagler*, 980 N.E.2d at 383. But the attorney-fees statute is written in the disjunctive, requiring only that the trial court find the claim frivolous, unreasonable, groundless, *or* in bad faith. *See* Ind. Code § 34-52-1-1(b)(1), (3).[3]

---

[3] Because we do not reach the issue of bad faith, we also do not reach the issue of whether the April 2013 newspaper article was improperly admitted by the trial court.

[22] Moreover, we find that even if we disregard entirely each of the findings Kitchell challenges, the remaining, unchallenged findings still amply support the conclusion that Kitchell's claim was (at least) unreasonable and groundless. *See Wagler*, 980 N.E.2d at 383. Thus, we do not need to analyze the remaining challenged findings individually. As to the three conclusions of law Kitchell challenges, we find that they are supported by the evidence. Paragraph 6 of the conclusions of law reads as follows: "The Plaintiff's complaint was unreasonable, frivolous, and groundless because it is based on two fallacies that any lawyer could and should have recognized prior to filing this lawsuit." Appellant's App. p. 14. The evidence supports the conclusion that Kitchell's complaint was unreasonable and groundless and arguably frivolous, and we do not find that it was erroneous—let alone "demeaning and argumentative," as Kitchell asserts, Appellant's Br. p. 18—to characterize Kitchell's arguments in this matter as "fallacies." "Fallacy" is defined as "[a]ny unsound, and usu[ally] deceptive, argument or inference. . . . The presence of a fallacy in a legal argument is a defect . . . in the legal reasoning." *Black's Law Dictionary* 718 (10th ed. 2014). "Unsound" means "not valid or well founded." *Id*. at 1772. The term "fallacies" accurately captures the nature of Kitchell's legal arguments in this matter: while it does not appear that they were deceptive, they were unsound and defective.

[23] Kitchell also complains about being characterized as "unreasonable" by the trial court. Specifically, the trial court in Paragraph 19 wrote, "Because Indiana is a home rule state, it would be obvious to any reasonable attorney that this language [from Antieau's treatise] offered no support to the Plaintiff's position[,]" Appellant's App. p. 17, and in Paragraph 32 the trial court wrote, "No reasonable person would believe the ratification

to be ineffective or that the Plaintiff could assert a claim." *Id*. at 19. Under Indiana law, a claim is "unreasonable" if "no reasonable attorney would consider the claim justified or worthy of litigation." *See* I.C. § 34-52-1-1; *see also Wagler*, 980 N.E.2d at 383. Therefore, it makes sense that the trial court would use the same language in concluding that the claim was, indeed, unreasonable. We also find adequate support for the conclusion in Paragraph 32—that "no reasonable person" would believe there was a valid claim on the ratification issue—in light of Indiana Code section 36-1-4-16, the statute explicitly authorizing ratification of *any* action. *See* I.C. § 36-1-4-16 ("A unit may ratify any action of the unit or its officers or employees if that action could have been approved in advance."). Therefore, we find that the evidence supports the three conclusions of law challenged by Kitchell.

[24] As a final matter, we find no merit in Kitchell's claim that she is shielded from the attorney-fee statute because she characterizes this case as a matter of first impression. In support of this claim, Kitchell cites *In re Visitation of A.R.*, in which this Court wrote as follows:

> [W]e must view charges of "frivolous, unreasonable, or groundless" claims with suspicion. This is especially true where the case is one of first impression, even if "rudimentary legal reasoning" would have led a person to believe the Indiana courts probably would rule against the person raising the claim.

723 N.E.2d 476, 480 (Ind. Ct. App. 2000) (internal citations omitted).

[25] In response to this argument, the City disputes the applicability of that case and the notion that this is a case of first impression at all, in light of the "wholly unsupported theories" that formed the basis of Kitchell's claims. Appellee's Br. p. 22. When reviewing an award of attorneys' fees, this Court must remain cognizant of the fine

balance between respect for an attorney's duty of zealous advocacy and "the important policy of discouraging unnecessary and unwarranted litigation." *See Kahn*, 533 N.E.2d at 170. And indeed, there is support for refraining from awarding attorneys' fees in order to avoid a chilling effect in legitimate cases of first impression, even in cases where "rudimentary legal reasoning" would have led a person to believe the Indiana courts *probably* would rule against the person raising the claim. *A.R.*, 723 N.E.2d at 480. But in this case, for the reasons discussed above, there was no possibility that Kitchell's claim would prevail. As stated by the City, "An entirely frivolous argument is not a question of first impression. It is not a question at all." Appellee's Br. p. 22.

In light of the foregoing, we cannot say the trial court abused its discretion in awarding attorneys' fees in this matter.[4]

Affirmed.

Baker, J. and Riley, J., concur.

---

[4] We do not review the amount of the award because Kitchell only challenges the decision to award fees, not the amount.