# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 19 2019, 5:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of W.H. (Minor Child) and S.M. (Father),

S.M. (Father),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

September 19, 2019

Court of Appeals Case No.
19A-JT-537

Appeal from the
Clark Circuit Court

The Honorable
Vicki Carmichael, Judge

Trial Court Cause No.
10C04-1804-JT-16

**Vaidik, Chief Judge.**

# Case Summary

S.M. ("Father") appeals the termination of his parental rights to his son, W.H. ("Child"). We affirm.

# Facts and Procedural History

In January 2017, Child was born to Father and F.H. ("Mother"). At the time of his birth, Child tested positive for opiates and amphetamine. *See* Ex. A. Child had withdrawal symptoms, such as increased muscle tone, low-grade fever, tremors, jerking, and loose stool. *See id.* Mother admitted using methamphetamine and heroin "pretty much every day" since March or April 2016 and throughout the course of her pregnancy. *Id.* At the time of the birth, Father's whereabouts were unknown, and he had two criminal cases pending: he was charged with Level 6 felony possession of a narcotic drug in May 2016, *see* 22D02-1605-F6-1121, and with Class A misdemeanor driving while suspended in January 2016, *see* 22D02-1601-CM-192. After Child was born, he was removed from Mother's care by emergency custody order and remained in the hospital.[1] *See id.*

A few days later, on February 2, the Department of Child Services (DCS) filed a petition alleging that Child was in need of services (CHINS). The petition alleged that Mother had exposed Child to drugs while pregnant and that Father

---

[1] Mother has voluntarily relinquished her parental rights to Child and does not participate in this appeal.

was unable to be located to care for Child. An initial hearing on the CHINS petition was held the next day, February 3. Father appeared and admitted the allegations in the petition. Following the hearing, the court found that Child was a CHINS and ordered that Child continue to be detained. The trial court also ordered that Child be placed in relative care with Father's daughter when he was released from the hospital. A few days later, on February 9, Father was tried for his 2016 offenses. Following a bench trial, the trial judge found him guilty of Level 6 felony possession of a narcotic drug and Class A misdemeanor driving while suspended. He was sentenced to thirty months for Level 6 felony possession of a narcotic drug and a concurrent term of one year for Class A misdemeanor driving while suspended, with six months executed and twenty-four months suspended to probation. In May 2017, he was released to probation.

[4] In June, following a dispositional hearing, the court ordered that Father participate in services, including supervised visitation, drug screens, a substance-abuse assessment, and a parenting assessment. The court also ordered that Father obey the law and notify the Family Case Manager (FCM) of any arrest or criminal charges within five days. On June 19, Father was charged with committing Level 4 felony dealing in methamphetamine, Level 6 felony possession of methamphetamine, Level 6 felony unlawful possession of a legend drug, Level 6 felony possession of a narcotic drug, and Class C misdemeanor possession of paraphernalia. *See* Ex. E; *see also* 10C02-1706-F4-60. In January 2018, Father entered into an agreement with the State, in which

he agreed to plead guilty to Level 6 felony possession of methamphetamine, Level 6 felony unlawful possession of a legend drug, and Level 6 felony possession of a narcotic drug in exchange for the State's dismissal of all other charges. The trial court accepted the plea agreement and sentenced him to 545 days with 369 days suspended to probation. After he was credited for time served, Father was released to probation on January 9. As part of his probation, Father agreed not to commit another criminal offense and that he would not use or possess controlled substances unless prescribed by a physician. *See* Ex. F. On February 6 and March 9, Father was screened for drugs and tested positive for methamphetamine and amphetamine. *See id.* Then on April 18, he was charged with committing Level 6 felony possession of methamphetamine and Class A misdemeanor possession of paraphernalia. *See id.*; *see also* 22D03-1804-F6-846. Later that month, DCS filed a petition to terminate Father's parental rights to Child.

[5] In May, the State petitioned to revoke Father's probation in his June 2017 case for committing new criminal offenses in April and testing positive for methamphetamine and amphetamine in February and March. *See* Ex. F. Around that same time, Child's placement was changed from relative care with Father's daughter to foster care. When Child arrived at his foster-care placement, he was very little for his age, malnourished, and behind on vaccinations. *See* Tr. p. 162. He also could not walk or talk. Since being placed in foster care, Child has learned to walk, "communicates really well through sign," and is "starting to talk." *Id.*

[6] A fact-finding hearing on the termination petition was held over two days on October 15 and December 4, 2018. FCM Alicia Theis testified that Father has "always refused to do any services, meet with [her], or even entertain the possibility of him doing services." Tr. p. 45. FCM Theis said that during the CHINS case, Father was arrested twice—in June 2017 and April 2018—and did not comply with the court's order to obey the law. *Id.* at 47-48. FCM Theis recommended that Father's parental rights be terminated and that Child be adopted. *See id.* Jackie Estephan, one of Father's probation officers, testified that during her supervision of Father, he tested positive for illicit substances five times. *See id.* at 99. Guardian ad Litem (GAL) Bernadette Olmos testified that Child uses "sign language, currently, to communicate" and Father "has been against . . . the use of sign language." *Id.* at 107, 114. GAL Olmos said that Child needs permanency and that she believes that the foster placement can provide that permanency. *See id.* at 114. GAL Olmos wished Father could have more time to try and reunite with Child but ultimately said that she would choose termination of Father's parental rights over giving him custody of Child.[2] *See id.* at 124. Dennis Hefton, one of Father's visitation supervisors, testified that in observing Father's visits with Child, he believes that Father does

---

[2] Father challenges the trial court's finding regarding this testimony. That finding, Finding No. 21(b), says, "[The GAL] was sympathetic to [Father] and wished to give him more time but noted that [Father] was not a fit custodian as of the date of the termination hearing and finally concluded th[at] parental rights should be terminated." Appellant's App. Vol. II p. 11. Father contends that the "evidence does not support this finding." Appellant's Br. p. 15. It does. That is, the GAL testified, "So if I had to choose, you know, hand [Child] back today or terminate rights, terminate rights, basically." Tr. p. 124.

not understand Child's special needs.[3] *See id.* at 139. Dennis said, for example, that during one visit Father became "pretty upset that [Child was] signing" and "thought his son looked retarded." *Id.* at 140. Child's foster mother, T.E., testified that Child's "ability to communicate with signs is due to First Steps" and occupational therapy. *Id.* at 162-63. T.E. said that her family adores Child and would want to adopt him if Father's parental rights were terminated. *See id.* at 164.

[7] On January 14, 2019, after the fact-finding hearing had concluded, DCS filed a motion to reopen the hearing for newly discovered evidence, alleging that it had recently learned that an arrest warrant was issued for Father by the United States District Court for the Southern District of Indiana. *See* Appellant's App. Vol. II p. 45. On February 19, the trial court held a hearing regarding DCS's motion and, over Father's objection, allowed DCS to submit evidence that Father had been indicted on federal charges for possessing a firearm as a felon.[4] *See* Tr. p. 205. A few days later, on February 22, the trial court issued its order terminating Father's parental rights.

---

[3] Father also challenges Finding No. 21(c), which says, "The service providers said [Father] and [Child] had a loving relationship but noted that [Father] did not understand [Child's] special needs and that [Father] was not prepared to take custody of [Child] on the date of the termination hearing." He argues that the "record does not establish that [Father] did not understand [Child's] needs." Appellant's Br. p. 17. Again, it does. That is, Dennis testified that in observing Father's visits with Child, he does not believe that Father understands Child's special needs, *see* Tr. p. 139, and GAL Olmos testified that Child uses sign language to communicate and that Father has been against using sign language, *see id.* at 107, 114.

[4] In addition to Father's federal indictment, a review of his state criminal cases shows that there are currently three bench warrants for his failure to appear. *See* 22D02-1601-CM-192; 22D02-1605-F6-1121; 22D03-1804-F6-846.

Father now appeals.

# Discussion and Decision

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *In re K.T.K.*, 989 N.E.2d 1225, 1229 (Ind. 2013). Rather, we consider only the evidence and reasonable inferences that are most favorable to the judgment of the trial court. *Id.* When a trial court has entered findings of fact and conclusions of law, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* To determine whether a judgment terminating parental rights is clearly erroneous, we review whether the evidence supports the trial court's findings and whether the findings support the judgment. *In re V.A.*, 51 N.E.3d 1140, 1143 (Ind. 2016).

A petition to terminate parental rights must allege, among other things:

> (B) that one (1) of the following is true:

>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *In re K.T.K.*, 989 N.E.2d at 1231. If the court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[11] On appeal, Father only challenges the trial court's conclusion that termination is in Child's best interests. Therefore, we need only decide whether the evidence supports that conclusion.[5] To determine what is in the child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied*. In doing so, the trial court must subordinate the interests of the parent to those of the child. *Id.* The trial court need not wait until the child is irreversibly harmed before terminating the parent-child relationship. *Id.* Moreover, we have previously held that the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal

---

[5] Father contends that "the trial court adopted DCS' proposed findings of fact and conclusions of law word-for-word," Appellant's Br. p. 10, that the findings of fact "merely recite the testimony of witnesses," *id.* at 12, and that therefore the trial court's findings are not proper. While we by no means encourage the wholesale adoption of a party's proposed findings and conclusions of law, the critical inquiry is whether such findings are clearly erroneous. *Kitchell v. Franklin*, 26 N.E.3d 1050, 1058 (Ind. Ct. App. 2015), *trans. denied*. We see no evidence that the trial court's findings are clearly erroneous. Moreover, we do not agree that the trial court's findings merely recite the testimony of witnesses. While the order references some witness testimony, it also contains thoughtful findings that flow from that testimony. The trial court's findings are proper.

will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* at 1158-59.

[12] Father does not dispute the trial court's conclusion that there is a reasonable probability that the conditions that resulted in Child's removal will not be remedied. *See* Appellant's App. Vol. II p. 8. Indeed, he acknowledges that there is ample evidence to support this conclusion:

> [Father] and DCS did not always get along very well. [Father] was, at times, hostile to DCS staff and service providers and was not fully compliant with the programs and services he was ordered to participate in. . . . Specifically, he did not attend family and team meetings, did not participate in the drafting and implementation of [Child's] case plan, failed to attend hearings, refused to submit to some drug screens, did not participate in the Fatherhood Engagement program, refused to commit to a domestic violence assessment, failed to participate in an intensive outpatient treatment program, and failed to regularly visit with [Child]. . . . [Father] continued to test positive for methamphetamine on occasion and also refused to submit to random drug tests.

Appellant's Br. p. 7. Additionally, both FCM Theis and GAL Olmos supported termination of Father's parental rights. *See* Tr. pp. 49, 124. While this evidence alone is sufficient to support the trial court's conclusion that it is in Child's best interests to terminate Father's parental rights, GAL Olmos also testified that Child needs permanency and that she believed that Child's foster placement can provide that permanency. *See* Tr. p. 114; *see also In re A.D.S.*, 987 N.E.2d at 1159 ("permanency is a central consideration in determining the best interests of a child").

[13] Nevertheless, Father claims he is similar to the mother in *In re C.B.*, No. 18A-JT-3110, 2019 WL 2557309 (Ind. Ct. App. June 21, 2019), where we reversed the termination of her parental rights. In that case, although the mother relapsed and was incarcerated twice during the CHINS case, by the time of the termination hearing, she had completed a mental-health assessment, substance-abuse assessment, and a psychological evaluation. *Id.* at *5. She was compliant with her criminal case and had maintained sobriety for at least three months. *Id*. She had stable employment, had applied for health insurance, and had addressed her mental-health needs by visiting her doctor and starting medication. *Id.* We therefore concluded that termination of the mother's parental rights was not in the child's best interests. *Id.* at *7.

[14] Father is not at all like the mother in *C.B.* For starters, Father has recently been indicted on federal charges and is not in compliance with his other criminal cases. In fact, there are currently multiple bench warrants for his failure to appear. Moreover, unlike the Mother in *C.B.*, Father has not even engaged, let alone completed, most of the services that he was ordered to do.

[15] For all of these reasons, we find that the totality of evidence supports the trial court's conclusion that termination of Father's parental rights is in Child's best interests.

[16] Affirmed.

Riley, J., and Bradford, J., concur.