

**FILED**

Mar 13 2020, 9:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven P. Lammers
Mandel Horn & Rauch, P.C.
Carmel, Indiana

ATTORNEYS FOR APPELLEES

Benjamen W. Murphy
Griffith, Indiana

C. Anthony Ashford
Ashford Law Group
Valparaiso, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Staff Source, LLC,

*Appellant-Plaintiff,*

v.

Christine A. Wallace, Milan Kesic, Slobodan Kesic, The Resolve Group, LLC, and Resolve HR, LLC,

*Appellees-Defendants.*

March 13, 2020

Court of Appeals Case No.
19A-PL-1569

Appeal from the Lake Superior Court

The Honorable Calvin D. Hawkins, Judge

Trial Court Cause No.
45D02-1804-PL-32

**Brown, Judge.**

[1] Staff Source, LLC ("Staff Source"), appeals the trial court's order granting the motion for attorney fees filed by Milan Kesic, Slobodan Kesic, the Resolve Group, LLC, Resolve HR, LLC, and Christine Wallace (collectively, "Defendants"), and the order finding that Defendants were entitled to a certain amount of fees. Defendants request appellate attorney fees. We affirm the orders of the trial court, grant Defendants' request for appellate attorney fees, and remand.

## Facts and Procedural History

[2] In a letter dated June 20, 2005, Mirko Marich of Staff Source wrote to Christine Wallace, referenced Wallace's vast industry experience and proposed an "Independent Contractor working relationship whereby [she] essentially will work without any Supervision from the Staff Source office." Exhibits Volume II at 83.

[3] In a memo dated June 2, 2006, Christian Flores of Staff Source wrote Wallace, thanked her for her hard work, and outlined a compensation package including a base salary and commission. Wallace worked as an employee for about a year or less until Staff Source moved an internal person into that role.

[4] On June 19, 2007, Staff Source and Wallace signed a document titled "Employment Agreement" which provided in part:

> 1. EMPLOYER hereby employs EMPLOYEE in the capacity of SALES or such other capacity as EMPLOYER shall direct; and EMPLOYEE hereby accepts such employment upon the terms and conditions hereinafter set forth.

2. The parties jointly acknowledge their relationship as one of employment-at-will, and that this Agreement does not confer or infer any rights to continued employment. EMPLOYER or EMPLOYEE may terminate this relationship at any time with or without cause.

* * * * *

9. In consideration of the services to be rendered by EMPLOYEE, EMPLOYER shall pay EMPLOYEE compensation as set forth in Exhibit A "EMPLOYEE Compensation" attached hereto and forming a part hereof.[1] This compensation may change or be modified, at the sole discretion of EMPLOYER, whenever EMPLOYER deems necessary.

* * * * *

15. The nature of the system and methods in EMPLOYER's business is such that EMPLOYEE will be placed in a close business and personal relationship with the customers of EMPLOYER and be privy to confidential customer usage and rate information. Accordingly, during the term of this Agreement and for a period of one (1) year immediately following the termination of EMPLOYEE's employment, for any cause whatsoever, so long as EMPLOYER continues to carry on the same business, said EMPLOYEE shall not, for any reason whatsoever, directly or indirectly, for himself or on behalf of, or in conjunction with, any other person, persons, company, partnership, corporation or business entity:

> (i) Call upon, divert, influence or solicit or attempt to call upon, divert, influence or solicit any employee, customer or customers of EMPLOYER;

---

[1] Wallace testified that Exhibit A was never attached to the Employment Agreement.

(ii) Divulge the names and addresses of any information concerning any customer of EMPLOYER;

(iii) Disclose any information or knowledge relating to EMPLOYER, including but not limited to, EMPLOYER's system or method of conducting business to any person, persons, firms, corporations or other entities unaffiliated with EMPLOYER, for any reason or purpose whatsoever;

(iv) Own, manage, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of the same, similar or related line of business as that carried on by EMPLOYER within a radius of twenty-five (25) miles from EMPLOYEE's home office or within a radius equivalent to EMPLOYEE's defined territory, whichever is greater.

The time period covered by the covenants contained herein shall not include any period(s) of violation of any covenant or any period(s) of time required for litigation to enforce any covenant.

If the provisions set forth in Paragraph 15 are determined by a court of competent jurisdiction to be too broad to be enforceable, then the parties agree the area and/or length of time shall be reduced to such areas and times as the court shall deem enforceable.

The covenants as set forth in this Paragraph 15 shall be construed as an agreement independent of any other provision in this Agreement and the existence of any potential or alleged claim or cause of action of EMPLOYEE against EMPLOYER, whether predicted [sic] on this Agreement or otherwise, shall not constitute a defense to the enforcement by EMPLOYER of the covenants contained herein. An alleged or actual breach of the Agreement by EMPLOYER shall not be a defense to enforcement of the provisions of Paragraph 15.

Exhibits Volume II at 12-13 (some capitalization omitted).

[5]     Staff Source provided Wallace a 1099 Form listing her nonemployee compensation for years 2014, 2015, 2016, and 2017.

[6]     In April 2017, Wallace became the subject of an IRS audit related to 2015 and 2016 and an issue arose regarding her status as an independent contractor of Staff Source.

[7]     At some point, Staff Source and Wallace signed a document titled "Working Agreement" which provided in part:

> In an effort to formally define the terms of our working relationship, we submit the following:
>
> Position: Independent Sales Contractor
>
> Regardless of the title used to define your association with Staff Source, your position will be as an independently contracted Sales Representative. As such, Staff Source will not be responsible for payroll deductions, unemployment liability, workman's compensation insurance, nor contribute to social security or Medicare.
>
> Commission:
>
> In consideration of any contracts Staff Source secures as a result of your sales efforts, Staff Source will pay as a commission the following . . . .
>
> * * * * *
>
> The relationship hereby established is that of an Independent Sales Representative. The Representative is neither an employee of Staff Source nor a legal representative and may not assume

any obligation of any kind (without prior approval of Staff Source), implied or expressed on behalf of Staff Source.

Staff Source will reimburse for pre-approved marketing related expenses. Also, an auto allowance of $350.00/month and a $50.00/month mobile phone reimbursement will be paid monthly for the prior month's expenses.

Either party may terminate this agreement at any time without notice.

*Id.* at 15 (italics omitted). The document listed a handwritten date of June 19, 2007, after the signatures of Kari Marich of Staff Source and Wallace. According to Wallace, the IRS auditor asked Staff Source to provide documentation, she signed the document without dating it in 2017 during the course of the audit, and the dates were subsequently added by Kari.[2]

[8] Beginning in December 2016, Wallace began to have issues in her arrangement with Staff Source under the new ownership of Mirko. In an email from Kari to Wallace on November 30, 2017, Kari wrote in part: "You're an independent contractor and I cannot dictate to you how much time you should spend at the office." *Id.* at 169.

[9] In a letter dated January 5, 2018, Wallace informed Mirko and Kari that day would be her last as an independent sales contractor for Staff Source. On

---

[2] When Mirko was asked if the testimony that the document was backdated was correct, he answered: "Was that it was dated, but it was part of the original agreement, but it was dated." June 6, 2019 Transcript 156.

January 23, 2018, Mirko sent Wallace an email which stated she was in breach of Paragraph 15. Wallace replied stating "per legal counsel consulted prior to resignation," the signed contract containing Paragraph 15 was null and void because she was an independent contractor and not an employee and she would "not 'go after' accounts of Staff Source." *Id.* at 187. Mirko responded and stated he was "well aware of the Independent Contractor status and well aware of the terms of the Employment Agreement which specifically states you are 'referred' to as an 'EMPLOYEE'." *Id.* at 188. He also stated that "neither document exudes [sic] the terms of the other, rather they collectively address all the terms." *Id.*

[10] On April 9, 2018, Staff Source filed a Complaint for Preliminary and Permanent Injunction and Damages against Wallace, Milan, Slobodan, and the Resolve Group, LLC and alleged: Count I, breach of contract; Count II, violation of the Indiana Uniform Trade Secrets Act; Count III, tortious interference with a contract; Count IV, tortious interference with business relationships; Count V, damages arising from civil conspiracy; Count VI, unjust enrichment; and Count VII, preliminary and permanent injunction.

[11] A letter dated April 13, 2018, from Staff Source's counsel to Wallace, Milan, Slobodan, and the Resolve Group, LLC, referred to the June 19, 2007 document titled "Employment Agreement," *Id.* at 11, as the "Non-Compete,

Non-Solicitation and Confidentiality Agreement."[3] *Id.* at 79. The letter stated in part: "We understand Ms. Wallace will attempt to claim that the Agreement is unenforceable because she is referred to as 'employee' in the Agreement, however, Ms. Wallace signed the Agreement and agreed to its terms." *Id.* It also asserted that "the fact that Ms. Wallace was an independent sales contractor for Staff Source does not make the covenants in the Agreement unenforceable." *Id.*

[12] On May 30, 2018, Milan, Slobodan, and the Resolve Group, LLC filed an answer and requested that Staff Source "be liable for paying said defendants' attorney fees and costs." Appellant's Appendix Volume II at 97. On June 11, 2018, Wallace filed her answer and requested that Staff Source be liable for paying her attorney fees.

[13] On June 14, 2018, the court granted Staff Source's motion for leave to file an amended complaint. On June 15, 2018, Staff Source filed a Motion for Clarification and to Further Amend Complaint by Interlineation. That same day, Staff Source filed a Motion to Inspect Wallace's Laptop Computer and Smart Phone. On June 19, 2018, the court granted Staff Source's motion to further amend the complaint by interlineation. Specifically, the court ordered that "Plaintiff's Amended Complaint for Preliminary and Permanent

---

[3] During the direct examination of Wallace, Staff Source's counsel referred to Paragraph 15 of the Employment Agreement as the "non-compete, non-solicitation, confidentiality agreement." July 23, 2018 Transcript at 30.

Injunctions and Damages filed June 13, 2018 is hereby AMENDED BY INTERLINEATION such that Count I of the Amended Complaint includes the allegation that Defendant, Christine A. Wallace, breached the terms of the subject Non-Compete, Non-Solicitation and Confidentiality Agreement with Plaintiff due to her actions with the Resolve Group, LLC and/or Resolve HR, LLC." *Id.* at 180. That same day, the court granted Staff Source's motion to inspect Wallace's computer and phone.

[14] On June 27, 2018, Wallace filed a Motion for Emergency Hearing on Plaintiff's Request for Preliminary Injunctive Relief and asserted "Staff Source's baseless claims are effectively doing what the alleged Employment Agreement cannot do: restraining [her] ability to earn a livelihood via frivolous litigation based upon an alleged Employment Agreement governing an admittedly non-existent employment relationship." *Id.* at 183. That same day, the court granted Wallace's motion and scheduled a hearing for July 2, 2018. On June 28, 2018, Staff Source filed an Emergency Motion to Continue July 2, 2018 Hearing and to Compel Discovery Responses and to Compel Defendant Wallace's Cooperation with Inspection and Copying of her Smart Phone and Laptop Computer. On July 2, 2018, the court entered an order continuing the July 2, 2018 hearing and compelling Wallace's cooperation with the June 19, 2018 order.

[15] Meanwhile, on June 29, 2018, Milan, Slobodan, and the Resolve Group filed an answer to Staff Source's amended complaint. They requested that Staff Source "be liable for paying said defendants' attorney fees and costs." *Id.* at

222. On July 10, 2018, Wallace filed an answer to Staff Source's amended complaint for preliminary and permanent injunction and damages and requested that Staff Source be ordered to pay her attorney fees.

[16] On July 11, 2018, the court entered an agreed scheduling order which set a hearing on Staff Source's claims for injunctive relief for July 23, 2018. On July 16, 2018, Staff Source filed an Injunction Hearing Brief. That same day, Milan, Slobodan, the Resolve Group, LLC, and Resolve HR, LLC, filed a Pre-Hearing Brief Respecting Plaintiff's Requests for Injunctive Relief.

[17] On July 23, 2018, the court held a hearing. Wallace indicated she had twenty-five years of experience in the staffing business before becoming an independent contractor with Staff Source in 2005, she began a partial salaried employment position with Staff Source in June 2006 that involved managing employees, she returned to being an independent contractor, and she did not receive additional compensation with respect to entering into the Employment Agreement. She stated she began having issues in her contractor arrangement with Staff Source in 2016. When asked if she took any property from Staff Source from the time she decided she was leaving until the time she left, she answered, "Absolutely not." July 23, 2018 Transcript at 84. When asked about Exhibit EE, a prospect list, she stated she obtained the information for the prospect list by phone or by research or possibly by the leads that may have been given to her by the recruiters. With respect to Exhibit FF, a prospect list, she ensured she had not received a commission for any of the prospects listed before sending the prospect email. She testified that when she began working with Resolve HR,

she, Milan, and Dan[4] worked together to ensure she was not "going after actual clients that [she] worked with Staff Source" as a matter of professional courtesy. *Id.* at 86.

[18] The court admitted her non-employee compensation 1099 forms for years 2014 through 2017. Wallace testified that she never received a W-2 as an employee at any point from 2014 through 2017. With respect to the June 19, 2007 Employment Agreement, Wallace testified that she did not become an employee following the agreement, she never received an Exhibit A referenced in the agreement, she was not an employee in 2017, 2016, 2015, or 2014, and had not been an employee since 2006.

[19] At the end of the hearing, Staff Source's counsel stated that Staff Source agreed to dismiss Count VII with prejudice and intended to proceed to a jury trial on the remaining counts. That same day, the court granted the dismissal of Count VII of Staff Source's complaint with prejudice.

[20] On July 30, 2018, the court entered a case management order providing that all discovery be completed by January 8, 2019, all dispositive motions be filed by February 8, 2019, and scheduling a jury trial for May 20, 2019 as the primary date and April 8, 2019 as the secondary date.[5]

---

[4] On appeal, Staff Source refers to Slobodan as Dan.

[5] The court's order states: "This matter is set for JURY trial as follows: 2nd – APRIL 8, 2019; PRIMARY – MAY 20, 2019 at 8:30 a.m." Appellant's Appendix Volume III at 48.

[21] In February 2019, Staff Source's counsel emailed Defendants' counsel a proposed stipulation and order of dismissal. Defendants' counsel returned the stipulation after deleting a sentence that stated each party would bear their own attorney fees.

[22] On March 4, 2019, Staff Source filed a "Trial Rule 41(A) Stipulation to Voluntary Dismissal of Plaintiffs' Claims, With Prejudice" asserting that all parties "stipulate and agree to the Plaintiff's voluntary DISMISSAL of ALL of its claims against all Defendants, WITH PREJUDICE." Appellant's Appendix Volume III at 49 (some capitalization omitted). On March 5, 2019, the court entered an order dismissing Staff Source's claims against Defendants with prejudice.

[23] On May 6, 2019, Defendants filed a joint motion for attorney fees pursuant to Ind. Code § 34-52-1-1. On May 8, 2019, Staff Source filed a response. On May 30, 2019, Defendants filed a reply which was struck as untimely.

[24] On June 6, 2019, the court held a hearing on the motion for attorney fees. After some discussion, the court stated that "[i]t was obvious that Ms. Wallace was not an employee." June 6, 2019 Transcript at 122. The court went on to hear testimony.

[25] On June 10, 2019, the court entered an order granting the motion for attorney fees. Specifically, the court stated:

> As a preliminary matter, the Court finds that because all of
> Plaintiff's claims were dismissed with prejudice, Defendants were

the prevailing parties pursuant to I.C. 34-52-1-1(b). *See Northlake Nursing & Rehab. Ctr., L.L.C. v. Ind. Dep't of Health*, 34 N.E.3d 268, 274 (Ind. Ct. App. 2015) (a dismissal with prejudice is a dismissal and judgment on the merits); *See also Ilagan v. McAbee*, 634 N.E.2d 827, 829 (Ind. Ct. App. 1994) (a voluntary dismissal **with prejudice** operates as a common law *retraxit*, wherein the plaintiff openly and voluntarily renounces its suit court; such a dismissal is "on the merits", is conclusive of the rights of the parties; and operates as *res judicata* to all issues that could have been litigated); *See also D.S.I. v. Natare Corp.*, 742 N.E.2d 15[] (Ind. Ct. App. 2000) (A party may be construed as prevailing for purposes of I.C. 34-52-1-1(b), under an agreed entry or stipulation, so long as it resolved the dispute generally in the favor of the one requesting attorney fees and altered the litigants' legal relationship in a way favorable to the requesting party)[, *reh'g denied*, *trans. denied*].

This Court further finds that Defendants' Joint Motion was timely made, as a claim for attorney fees under I.C. 34-52-1-1 does not accrue until the party "prevails", and Indiana Courts have consistently held that the "standard procedure" for seeking attorney fees is to petition the court after the case is resolved on its merits. *Storch v. Provision Living, LLC*, 47 N.E.3d 1270, 1275 (Ind. Ct. App. 2015[]) Furthermore, the Supreme Court has held that there is no strict time limit for filing a request for fees after judgment, although it is "in some sense an equitable petition, and it might be that an extremely tardy request should fall on deaf ears due to lack of notice or staleness." *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453 (Ind. 2012). Notably, Plaintiff has offered no explanation of any prejudice incurred by Defendants' filing the Joint Motion 60 days after Dismissal opposed to say 45 days after Dismissal.

Plaintiff suggests that perhaps it would not have dismissed its case at all had it realized Defendants intended to seek attorney fees following dismissal. However, Defendants' response to such suggestion is well-taken. Plaintiff sought to dismiss all of its claims on the eve of the jury trial setting, with prejudice.

Assuming that the claims were groundless and/or frivolous, which is required for an award of attorney fees, should the Defendants have refused the offer and demanded that the jury trial over such claims be had? Here, the Defendants were in a position to mitigate the damages caused by a purported groundless and/or frivolous lawsuit by stipulating to the dismissal with prejudice of all claims, while refusing to agree that the parties would pay their own attorney fees. It is undisputed that Plaintiff originally requested the stipulation provide that the parties would pay their own attorney fees, and that Defendants refused to agree to that provision, and it was removed. Furthermore, there were no settlement agreements or releases requested or negotiated prior to dismissal. Moreover, the suggestion that Plaintiff was prejudiced because it may have persisted with its purportedly groundless and/or frivolous claims to trial is equally unavailing. Accordingly, Joint Motion was timely and properly made.

### Defendants' Entitlement to Attorney Fees Based Upon a Groundless and Frivolous Complaint

Defendants presented evidence and testimony to support its claim for attorney fees. By stipulation of the parties, certain exhibits from the Injunction Hearing were again admitted into evidence on Defendants' Joint Motion. The testimony, as well as documentary evidence established the following facts:

\* \* \* \* \*

15. Accordingly, all of Plaintiff[']s claims based upon the purported breach of the Employment were groundless as "no facts exist which support the legal claim relied on and presented by the losing party", Plaintiff. *See Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989), *summarily aff'd by* 543 N.E.2d 627 (Ind. 1989).

16. Furthermore, Plaintiff attempted to breath[e] life into its groundless claims by making material misrepresentations of fact

and fabricating an exhibit to the Complaint. Although the "Working Agreement" was admittingly signed by Wallace in 2017 after an audit, Plaintiff admittingly backdated the document ten years earlier to June of 2007, for the sole purpose of claiming that the Employment Agreement and the independent contractor "Working Agreement" were part of the same contract. Plaintiff's counsel continued to argue the same at the Injunction Hearing and even at the hearing on Defendants' Joint Motion. Accordingly, Plaintiff[']s Complaint was not only groundless, but also fraudulent.

17. Moreover, Plaintiff's claims were frivolous as it appears that they were made "primarily for the purpose of harassing or maliciously injuring" Wallace, as follows:

> a. Plaintiff is in the staffing business, and despite their attempts to muddy the same, its principals were well-aware of the difference between an employment and independent contractor relationship. In fact, their industry is based upon that difference.

> b. Prior to her resignation, the principals of Plaintiff readily acknowledged Wallace status as independent contractor.

> c. Several [m]onths prior to filing its lawsuit, Wallace made clear to Plaintiff's principals that the Employment Contract was "null and void" because she was an independent contractor, however, she would avoid personally "going after" Plaintiff's customers as a courtesy.

> d. Despite the same, and even after acknowledging his understanding that Wallace was an independent contractor, Mirko Marich threatened "severe financial consequences" if she continued to do business with his former business partners.

e. Plaintiff filed a seven-count Complaint against defendants on April 12, 2018, and thereafter, sent defendants a "Cease and Desist" letter, essentially demanding that Wallace immediately be removed from her position with Resolve Group. However, the "Cease and Desist Letter" also conspicuously includes a footnote stating "We understand that Ms. Wallace will attempt to claim that the Agreement is unenforceable because she is referred to as an [']employee['] in the Agreement, however, Ms. Wallace signed the Agreement and agreed to its terms".

f. In response to the "Cease and Desist Letter", counsel for Defendants advised counsel for Plaintiff, in writing, that all defendants disputed the enforceability of the terms of the Employment Agreement, as Wallace had been removed from her employment position with Plaintiff prior to 2008, and remained an independent contractor for Plaintiff for ten years prior to moving on with her career.

g. During the Injunction Hearing, this Court made clear that Employment Agreement was conditioned upon an employment relationship, and therefore the Covenants could not extend more than one year following the end of the employment relationship between Plaintiff and Wallace.

h. Accordingly, Plaintiff dismissed the claim for injunctive relief but refused the request of Wallace's attorney to dismiss the claim for breach of contract, and the case was set for a jury trial.

i. On February 19, 2019, less than two months prior to the trial setting, Plaintiff's counsel sent an email finally offering to dismiss all claims with prejudice.

j. Only after Defendants filed their Joint Motion did Plaintiff finally identify what it claimed to be "protected

trade secrets" that were purportedly misappropriated by Wallace. At [the] hearing, the evidence showed that there was no factual basis for the misappropriation of trade secret claim, either, The "Prospect List" was nothing more than a list of potential customers, compiled and prepared by Wallace as an independent contractor of Plaintiff on her home computer and thereafter emailed to Plaintiff in order to invite those "prospects" to an open house. Not only was there no basis to the claim that this was a "protected trade secret", the document was unquestionably Wallace's own work product for which she was never paid by Plaintiff.

18. In the interim, all Defendants were forced to retain counsel to defend against a groundless seven-count, seventeen page Complaint; to cooperate with intrusive discovery that included turning over and forensically copying the contents of Wallace's private laptop and cell phone; and to appear for hearing and defend against Plaintiff[']s groundless claims for injunctive relief.

19. Furthermore, this Court has been compelled to waste valuable judicial time and resources dealing with Plaintiff[']s claims, which were clearly groundless and frivolous at their filing.

20. While this Court is hesitant to award attorney fees pursuant to 34-52-1-1(b), this is precisely the type of situation that calls for an award of attorney fees, as Defendants were forced to defend against a seven-count Complaint that was entirely groundless, frivolous and even fraudulent at its inception. *See Charles Downey Family Ltd. P'ship v. S & V Liquor, Inc.*, 880 N.E.2d 322, 328-329 (Ind. Ct. App. 2008)[, *trans. denied*].

### Conclusions of Law and Order

After weighing the evidence presented to this Court at hearing, Defendants have established their burden of proof that Plaintiff[']s Complaint and all of its corresponding claims were

both groundless and frivolous, and this Court hereby Orders that Defendants shall be entitled to an award of reasonable attorney fees. Defendants shall have up to and including July 1, 2019 to provide this Court with a factual basis for the amount of attorney fees and costs claimed.

Appellant's Appendix Volume III at 158-165 (some bold and underlining omitted).

[26] On August 21, 2019, the court held a hearing. That same day, the court entered an order finding that Milan, Slobodan, the Resolve Group, LLC, and Resolve HR, LLC were entitled to an award of attorney fees and costs in the amount of $51,135, and Wallace was entitled to an award of attorney fees and costs in the amount of $25,128.38.

## *Discussion*

### I.

[27] The first issue is whether the trial court abused its discretion in ordering Staff Source to pay Defendants' attorney fees. Ind. Code § 34-52-1-1 provides:

> (a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.
>
> (b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:
>
> > (1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

(c) The award of fees under subsection (b) does not prevent a prevailing party from bringing an action against another party for abuse of process arising in any part on the same facts. However, the prevailing party may not recover the same attorney's fees twice.

[28] In discussing a prior version of the statute, the Indiana Supreme Court stated that the statute "strikes a balance between respect for an attorney's duty of zealous advocacy and 'the important policy of discouraging unnecessary and unwarranted litigation.'"[6] *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998) (quoting *Kahn v. Cundiff*, 533 N.E.2d 164, 170 (Ind. Ct. App. 1989), *adopted by* 543 N.E.2d 627, 629 (Ind. 1989)). "Subsections (b)(1) and (b)(2) of the statute focus on the legal and factual basis of the claim or defense and the arguments supporting the claim or defense." *Id.* "In contrast, subsection (b)(3) – 'litigated the action in bad faith' – by its terms requires scrutiny of the motive or purpose of the non-prevailing party." *Id.* The Indiana Supreme Court held:

---

[6] The Court was examining Ind. Code § 34-1-32-1, which similarly provided:

    (b)      In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if it finds that either party:

           (1)      brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
           (2)      continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or
           (3)      litigated the action in bad faith.

More precisely,

> bad faith is not simply bad judgment or negligence.
> Rather, it implies the conscious doing of a wrong because
> of dishonest purpose or moral obliquity. It is different
> from the negative idea of negligence in that it contemplates
> a state of mind affirmatively operating with furtive design
> or ill will.

*Id.* (quoting *Watson v. Thibodeau*, 559 N.E.2d 1205, 1211 (Ind. Ct. App. 1990)

(quoting *Young v. Williamson*, 497 N.E.2d 612, 617 (Ind. Ct. App. 1986), *reh'g*

*denied*, *trans. denied*)). The Court also explained:

> This Court has observed in related contexts that the legal process
> "must invite, not inhibit, the presentation of new and creative
> argument" to enable the law to grow and evolve. *Orr v. Turco
> Mfg. Co.*, 512 N.E.2d 151, 153 (Ind. 1987) (setting forth standard
> for punitive sanctions for frivolous appellate claims). To be sure,
> application of the statutory authorization for recovery of
> attorney's fees . . . must leave breathing room for zealous
> advocacy and access to the courts to vindicate rights. *Kahn*, 533
> N.E.2d at 170. Courts must be sensitive to these considerations
> and view claims of "frivolous, unreasonable, or groundless"
> claims or defenses with suspicion.

*Id.* at 925.

[29] Ind. Code § 34-52-1-1(b) "places an obligation on litigants to investigate the

legal and factual basis of the claim when filing and to continuously evaluate the

merits of claims and defenses asserted throughout litigation." *Landmark Legacy,*

*LP v. Runkle*, 81 N.E.3d 1107, 1116-1117 (Ind. Ct. App. 2017) (quoting *Gen.*

*Collections, Inc. v. Decker*, 545 N.E.2d 18, 20 (Ind. Ct. App. 1989)). "A claim is

'frivolous' if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law." *Kitchell v. Franklin*, 26 N.E.3d 1050, 1057 (Ind. Ct. App. 2015) (citing *Wagler v. W. Boggs Sewer Dist., Inc.*, 980 N.E.2d 363, 383 (Ind. Ct. App. 2012), *reh'g denied*, *trans. denied*, *cert. denied*, 571 U.S. 1131, 134 S. Ct. 952 (2014)), *trans. denied*. "A claim is 'unreasonable' if, based on the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation." *Id.* "A claim is groundless if no facts exist which support the legal claim relied on and presented by the losing party." *Purcell v. Old Nat. Bank*, 972 N.E.2d 835, 843 (Ind. 2012). "However, the law is settled that a claim is neither groundless nor frivolous merely because a party loses on the merits." *Kitchell*, 26 N.E.3d at 1057. "Bad faith is demonstrated where the party presenting the claim is affirmatively operating with furtive design or ill will." *Id.*

[30] "The trial court's decision to award attorney's fees under § 34-52-1-1 is subject to a multi-level review: the trial court's findings of facts are reviewed under the clearly erroneous standard and legal conclusions regarding whether the litigant's claim was frivolous, unreasonable, or groundless are reviewed de novo." *Purcell*, 972 N.E.2d at 843 (citing *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012)). "[T]he trial court's decision to award attorney's fees and any amount thereof is reviewed for an abuse of

discretion." *Id.* "A trial court abuses its discretion if its decision clearly contravenes the logic and effect of the facts and circumstances or if the trial court has misinterpreted the law." *Id.* "Covenants not to compete are in restraint of trade and are not favored by the law." *Harvest Ins. Agency, Inc. v. Inter-Ocean Ins. Co.*, 492 N.E.2d 686, 688 (Ind. 1986). "They are strictly construed against the covenantee and enforced only if reasonable." *Id.*

[31] To the extent Staff Source argues that the court adopted Defendants' proposed findings and conclusions wholesale, we observe that "[w]hen a trial court accepts verbatim a party's proposed findings of fact and conclusions thereon, that practice 'weakens our confidence as an appellate court that the findings are the result of considered judgment by the trial court.'" *Cty. of Lake v. Pahl*, 28 N.E.3d 1092, 1100 (Ind. Ct. App. 2015) (quoting *In re Marriage of Nickels*, 834 N.E.2d 1091, 1096 (Ind. Ct. App. 2005) (quoting *Cook v. Whitsell-Sherman*, 796 N.E.2d 271, 273 n.1 (Ind. 2003))), *reh'g denied*, *trans. denied*. It is not uncommon or per se improper for a trial court to enter findings that are verbatim reproductions of submissions by the prevailing party. *Id.* Although we by no means encourage the wholesale adoption of a party's proposed findings and conclusions, the critical inquiry is whether such findings, as adopted by the court, are clearly erroneous. *Id.* We also note, while Staff Source asserts that the trial court entered its August 21, 2019 order verbatim from Defendants' counsel, the two documents are not identical. The proposed order in the Appellant's Appendix differs from the court's order in some respects including that the proposed order requested fees of $52,560 and

$27,103.38 and the court's order awarded fees in the amount of $51,135 and $25,128.38. *See* Appellant's Appendix Volume III at 204-208.

[32] Staff Source argues that: (A) Defendants were not prevailing parties; (B) it was unfairly prejudiced by Defendants' motion for attorney fees filed sixty-two days after dismissal; (C) its claims were not frivolous, unreasonable, or groundless; and (D) Defendants presented insufficient evidence regarding their fees.[7]

A. *Prevailing Parties*

[33] In *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 24 (Ind. Ct. App. 2000), *reh'g denied*, *trans. denied*, the Court held that "a party is a 'prevailing party' within the meaning of IC § 34-52-1-1, if that party successfully prosecutes its claim or asserts its defense," "the requisite successful litigation must culminate in a judgment," and "the judgment . . . may take the form of an agreed entry or stipulation, so long as it resolved the dispute generally in the favor of the one requesting attorney fees and altered the litigants' legal relationship in a way favorable to the requesting party."

[34] The record reveals the parties' attorneys filed a stipulation to dismiss Staff Source's claims with prejudice, and the court entered an order approving the dismissal and dismissing the claims with prejudice. "We have held that 'a

---

[7] Staff Source argues that the trial court improperly considered caselaw cited in Defendants' May 30, 2019 Reply that was struck by the court for being untimely. Staff Source cites *McGill v. Ling*, 801 N.E.2d 678, 683 (Ind. Ct. App. 2004), *reh'g denied*, *trans. denied*, which stated that "practitioners of the law know the effect of a trial court's decision to grant [a motion to strike]: any materials stricken, whether arguments or evidence, will not be considered by either the trial court or this court on appeal." We cannot say *McGill* precludes a trial court from considering caselaw merely because it was included in a brief which was struck by the court.

dismissal with prejudice constitutes a dismissal on the merits and is therefore conclusive of the rights of the parties and res judicata as to the questions that might have been litigated.'" *Northlake Nursing & Rehab. Ctr., L.L.C. v. State Dep't of Health*, 34 N.E.3d 268, 274 (Ind. Ct. App. 2015) (quoting *Baker & Daniels, LLP v. Coachmen Indus., Inc.*, 924 N.E.2d 130, 135 n.5 (Ind. Ct. App. 2010), *trans. denied*; and citing *Ilagan v. McAbee*, 634 N.E.2d 827, 829 (Ind. Ct. App. 1994)). The dismissal with prejudice in this case was a judgment on the merits and resolved the dispute generally in favor of Defendants and altered the litigants' legal relationship in a way favorable to Defendants. We conclude under the circumstances of this case that Defendants are prevailing parties.[8] *See id.* ("Consequently, the dismissal with prejudice was a judgment rendered on the merits."); *Kahn v. Cundiff*, 543 N.E.2d 627, 629 (Ind. 1989) (affirming the grant of attorney fees under Ind. Code § 34-1-32-1 after the plaintiff moved to dismiss the case).

B.     *Prejudice*

[35]     Staff Source argues it was unfairly prejudiced by Defendants' petition for attorney fees filed sixty-two days after dismissal because there was not sufficient notice by Defendants to seek fees.

---

[8] To the extent Staff Source cites *Reuille v. E.E. Brandenberger Const., Inc.*, 888 N.E.2d 770 (Ind. 2008), we note that *Reuille* did not address Ind. Code § 34-52-1-1, but addressed an issue of contract interpretation.

"[T]rial courts must use their discretion to prevent unfairness to parties facing petitions for fees." *R.L. Turner Corp.*, 963 N.E.2d at 460. "A request for attorneys' fees almost by definition is not ripe for consideration until after the main event reaches an end." *Id.* "Entertaining such petitions post-judgment is virtually the norm." *Id.* "To be sure, a request for fees is in some sense an equitable petition, and it might be that an extremely tardy request should fall on deaf ears due to lack of notice or staleness." *Id.*

In their May 30, 2018 answer and June 29, 2018 answer to the amended complaint, Milan, Slobodan, and the Resolve Group requested that Staff Source be liable for paying their attorney fees. In Wallace's June 11, 2018 answer, she requested that Staff Source be liable for paying her attorney fees. In her July 10, 2018 answer to the amended complaint, Wallace again requested that Staff Source be ordered to pay her attorney fees. In Wallace's June 27, 2018 motion for emergency hearing, she asserted "Staff Source's baseless claims are effectively doing what the alleged Employment Agreement cannot do: restraining [her] ability to earn a livelihood via frivolous litigation based upon an alleged Employment Agreement governing an admittedly non-existent employment relationship." Appellant's Appendix Volume II at 183. Staff Source states Defendants' counsel returned the stipulation dismissing the case and deleted a sentence stating that each party would bear the party's own attorneys' fees. Under these circumstances, we cannot say Defendants' petition for attorney fees came as a shock to Staff Source. *See R.L. Turner Corp.*, 963

N.E.2d at 460 (holding that, in light of the record, "the Town's renewed petition for attorneys' fees could hardly have come as a shock to Turner").

C.     *Claims Frivolous, Unreasonable, or Groundless*

Staff Source asserts its claims were not frivolous or groundless. Without citation to the record, it asserts there was a factual dispute of whether Wallace was an employee when she signed the applicable agreement and whether her compensation as an independent contractor was attached to the applicable agreement. Defendants argue all of Staff Source's claims except for Count II, violation of the Indiana Uniform Trade Secrets Act, were based upon a purported breach of the Employment Agreement.

Even assuming that the "Employment Agreement" was effective in 2007, Paragraph 15 limited the time of the agreement by providing that "during the term of this Agreement and for a period of one (1) year immediately following the termination of EMPLOYEE's employment . . . ." Exhibits Volume II at 12. Wallace testified that her employment relationship with Staff Source ended many years prior to 2018. The record contains 1099 forms for 2014, 2015, 2016, and 2017, which indicate Staff Source listed her compensation as nonemployee. Wallace testified she was exclusively a 1099 independent contractor for at least nine tax years prior to leaving Staff Source as an independent contractor. She also testified that the Working Agreement she signed in 2017 had nothing to do with the Employment Agreement she signed in 2007. Mirko testified that he could not find the Working Agreement in Staff

Source's records and that Wallace asked somebody from Staff Source to sign it during her IRS audit, which indicates that the Working Agreement was backdated by Staff Source.

[40] The record and the court's findings support that the Employment Agreement had expired years prior to Wallace's termination of her relationship with Staff Source and that Staff Source backdated the Working Agreement. We conclude that Staff Source's claims regarding breach of the Employment Agreement and tortious interference by Milan, Slobodan, and the Resolve Group with Staff Source's contractual relationship and business relationship with Wallace were frivolous, unreasonable, or groundless. The trial court did not abuse its discretion by ordering Staff Source to pay Defendants' attorney fees.

D. *Sufficient Evidence of Fees*

[41] Staff Source argues that Defendants did not submit the required evidence of the nature of legal services and reasonableness of the fee. It asserts the Defendants provided no third-party objective evidence of the nature of legal services and the reasonableness of the fee requested. It also asserts the court erred in awarding fees incurred after the March 5, 2019 dismissal.

[42] In support of their claim for attorney fees, Defendants submitted the Attorney Fee Request for Milan, Slobodan, the Resolve Group, LLC, and Resolve HR, LLC, which contained the affidavits of two attorneys including the amounts of billable time and a description of the work, and the Attorney Fee Request for Wallace containing the affidavits of two attorneys and billing sheets. This

evidence was sufficient to support the trial court's determination of the amount of the attorney fees award. We note that the awarded fees are equal to the amounts requested in the Attorney Fee Request for Defendants Milan, Slobodan, the Resolve Group, LLC, and Resolve HR, LLC, and the Attorney Fee Request for Wallace, and do not include the supplemental fees mentioned in the supplemental affidavits of Defendants' counsel. We cannot say the court abused its discretion.

## II.

[43] With respect to Defendants' request for appellate attorney fees, Ind. Appellate Rule 66(E) provides that this Court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith. Damages shall be in the Court's discretion and may include attorneys' fees." Our discretion to award attorney fees under Ind. Appellate Rule 66(E) is limited to instances when "an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). To prevail on a substantive bad faith claim, a party must show that the appellant's contentions and arguments are utterly devoid of all plausibility. *Id.* Procedural bad faith occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. *Id.* at 346-347. In light of Staff Source's appellate briefs and arguments, we conclude that Defendants are

entitled to appellate attorney fees, and we remand to the trial court to determine the proper amount of the attorney fees.

[44] For the foregoing reasons, we affirm the trial court's orders, grant Defendants' request for appellate attorney fees, and remand for a determination of their reasonable appellate attorney fees.

[45] Affirmed and remanded.

Baker, J., and Riley, J., concur.